[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
APPEARANCES:
REPRESENTING THE STATE OF CONNECTICUT: Attorney Tammy Geathers Assistant Attorney General
REPRESENTING THE CHILD: Attorney Sam Christodlous
ALSO PRESENT: Joan Saglio, Prosecutor
Wanda D Mother
Pedro Q Father
Terrence Weaver-Bey, Parole Officer, Joanne Perry, Parole Supervisor
GLORIA ARROYO CERTIFIED COURT REPORTER
THE COURT: This is Carlos. How old are you Carlos?
MR. Q. Fifteen.
THE COURT: Fifteen. Thank you. We have Attorney Christodlous for the minor. We have Miss Geathers. Miss Saglio is also present. Ma'am you're the mother?
MS. D Yes.
THE COURT: And your name, please?'
MS. D Wanda D
THE COURT: And, sir?
MR. Q Pedro Q
MR. WEAVER-BEY: Terrence Weaver-Bey, Parole Officer. Thank you, Mr. Weaver-Bey. And Joanne Perry, Parole Supervisor.
THE COURT: Thank you, Miss Perry. An interpreter is present for the mother and father, and I would indicate that today there was a power failure in the courthouse at approximately 9:07 in the morning. It's now 11:30 and the power hasn't gone on, so we're not in our regular courthouse.
We're in a room were — providing light from outside in order so we can proceed. And I haven't heard anything whether they're going to be closing the building, but it has been nearly two — CT Page 4738 two hours without electricity, and this is a motion for petition for an extension of the commitment, is that right?
MS. GEATHERS: Yes, your Honor.
THE COURT: And the — He was committed on what time, Madame Attorney General, when was he committed?
MS. GEATHERS: I'd have to look at the petition.
THE COURT: July 23, of 1998?
MS. GEATHERS: That is correct, your Honor.
THE COURT: And he was committed as a delinquent, and the underlying charges were sexual assault, is that correct?
MS. GEATHERS: That is correct, your Honor.
THE COURT: On the alleged molestation of a younger sister over an extended period of time.
Where is he presently?
MS. GEATHERS: He's currently at Brightside, your Honor.
THE COURT: Brightside. And that is up in Massachusetts?
MS. GEATHERS: Massachusetts, your Honor.
THE COURT: And before we get to that, I would indicate that there has been filed this motion — this morning, a motion to dismiss the petition that was filed today and today's date by Attorney Feliu who today is — being in her stead is Attorney Christodlous, and there has been no brief filed with that motion to dismiss, but would you like to be heard briefly on that, Mr. Christodlous?
MR. CHRISTODLOUS: Yes, your Honor. The motion to dismiss was filed this morning. There was — The petition came in late. Petition for the extension of commitment came in late, therefore, Attorney Feliu was able to get the motion to dismiss in but nothing else. At this point, we are at this point objecting to the timing on the extension of the commitment as well as, your Honor, the fact of the underlying issue of the constitutionality of the Statute under 120 — sorry — 46b-141 subsection (b). CT Page 4739
THE COURT: And the commitment does expire this Sunday, January 23, of the year 2000. Do you wish to be heard regarding the motion to dismiss the petition? I know you all only saw this this morning and, again, as indicated, there's no electricity, so there's no way the petition — the motion to dismiss was even reproduced for you, but if you have an opportunity to read the Court's.
MS. GEATHERS: I did, your Honor. I'd ask that Attorney Feliu's motion to dismiss as presented by Attorney Christodlous be denied, your Honor.
THE COURT: All right. Thank you. All right. The motion does make reference to 46b-129 (k)(1), which is, indeed, the civil side of the Court and refers to neglect petitions, and it talks in terms of a neglect of a child and the vesting of custody with the Department of Children and Families, and a motion for review and a motion to extend or revoke that commitment and the time elements involved such as the ten months after a permanency plan has been approved. The Court notes that there was no — and its agreed amongst the parties, is it not, that there was no neglect petition here?
MR. CHRISTODLOUS There was not.
THE COURT: The only petition that existed was on the delinquency side. It appears, from a reading of this subsection (1) of 46b-129 (k)(1), that it would apply to the neglect side of the Court, the civil side of the Court. There is, as indicated, no brief that has been filed with this motion, only the motion is here. There has been no case law cited that would support a dismissal at this point on either ground. Generally, the motion speaks in terms of two grounds. At this time the Court is going to deny the motion.
As regards the commitment extension, do you wish to comment on that further Attorney Geathers?
MS. GEATHERS: Basically, your Honor, we're asking that the extension be granted without prejudice. Your Honor, as previously indicated, it's due to expire 1/23, which is Sunday, and, apparently, no one will be here on a Sunday, your Honor. And as a the petition alleges, he needs to be maintained at Brightside facility where he is so he can complete the steps in the program that he's required to complete under Brightside. CT Page 4740
Anyway, according to Brightside, your Honor, he has yet to complete those steps and they're estimating that he may — he'll probably complete those steps within a ten month — within approximately ten months, in ten months, your Honor. Based on that, we're asking that the commitment be extended, your Honor without prejudice.
THE COURT: He is at Brightside, as you have indicated, and he hasn't completed all of the steps?
MS. GEATHERS: That is correct.
THE COURT: Do you know how many steps he has finished at this point?
MS. GEATHERS: Eight. He has eight steps, your Honor.
THE COURT: Mr. Weaver-Bey or Miss Perry, do you wish to comment regarding the completion of the steps?
MS. PERRY: There's 13 steps, your Honor, that are to be completed. He's completed eight. They're feeling that a return to the community at this time would not be "safe, that they feel he — he could complete it. Behaviorally, he has been doing well, but treatmentwise he did need to complete this and they're estimating ten months. So we're feeling — and going to go with the treatment recommendation that it be extended.
THE COURT: There is some correspondence to this part of the file hire — it was in the file — regarding a letter, I think, to Mr. Weaver-Bey and a letter to you, Miss Perry, and Mr. Weaver-Bey, regarding his progress. And did you attach these as part of the motion when you submitted them?
MS. PERRY: Yes.
MR. WEAVER-BEY: Yes.
THE COURT: All right. The Court has reviewed them. Anything further, Miss Geathers?
MS. GEATHERS: Nothing from the State, your Honor.
THE COURT: Let me ask you, does the State feel it is in it's best interest at this point — CT Page 4741
MS. GEATHERS: Yes, your Honor.
THE COURT: — to extend the commitment?
MS. GEATHERS: The State feels it's in the best interest to extend the commitment.
THE COURT: Parole services agrees with it?
MR. WEAVER-BEY: Yes, your Honor.
MS. PERRY: Yes, your Honor.
THE COURT: And that's based on the letter you received from Brightside.
MR. WEAVER-BEY: That is correct, your Honor.
THE COURT: Two — Two of which were — Two of which were attached to the petition. I'm sorry. One of which was January 13th of 2000, the other December 29, 1999, is that correct, Mr. Weaver-Bey and Miss Perry?
MR. WEAVER-BEY: Yes, your Honor.
MS. PERRY: Yes.
THE COURT: Mr. Christodlous, do you wish to comment, sir?
MR. CHRISTODLOUS: Yes, your Honor. We would object at this time to the petition going forward on the best interest grounds. We believe it's in the child's best interest that he be returned to his family. His father's living out of the — of state with — Father's living in New York. The sister who is the alleged victim in this case is living with the mother in Connecticut, and based upon the report of Brightside that he's doing well there, though he's not completed his 13 steps, we would say it's in his best — our interest that he be returned to his parent's custody at this time.
THE COURT: All right. Thank you, sir. Anything further from any party?
MS. GEATHERS: Nothing from the State, your Honor. CT Page 4742
THE COURT: All right. The Court has reviewed the petition and the history of this case and was involved in it for sometime, and notes that it was a situation where there was alleged sexual violation involving a sibling in the household and that returning him to the community would also possibly indicate that there would be, again, a return to the family which is a situation that is somewhat different than when there is a sexual assault victim who's not a family member. Indeed, he has made some progress, but it's been termed as being moderate only, and that he's been slow in achieving the goals of the various chapters — in completing those chapters at Brightside. It does appear that it would be in his best interest that he complete all of these chapters so that when he is returned to the community and back to the family unit, that there obviously not be a reoccurrence of the type of behavior which has been — previously been verified to have' occurred.
That being the situation, and the opinion of the treatment team as quoted in the letter of December 29, 1999, that discharge to the community without the completion of these particular treatment requirements would put him at increased risk, the Court accepts that recommendation of Brightside and is going to find that it is in his best interest that the commitment be extended.
Also, it is in the best interest of the community as well, that the extension be granted. Anything further at this time? Did — Do we set a new date on this?
MS. GEATHERS: Set a new date on this?
THE CLERK: We will have to, Judge. But I don't have the book.
THE COURT: All right.
THE CLERK: The new date for the commitment will be July 23 of the year 2001.
THE COURT: All right. The — 2000.
THE CLERK: 2001.
THE COURT: 2001
THE CLERK: 18 months.
THE COURT: And for 18 months, the Court pursuant to 46b-141
CT Page 4743 subsection (b) small "B" in parenthesis, the Court does continue the commitment for an additional period of not more than 18 months.
MR. CHRISTODLOUS: Your Honor, based on that, if I may, we would like to again lodge our formal objection based on the constitutionality of that statute and claim — we claim the statute is unconstitutional on it's face and delinquency matters are criminal in nature.
THE COURT: You're comments are noted.
MR. CHRISTODLOUS Thank you, your Honor.
THE COURT: Anything further at this time?
MS. GEATHERS: Nothing, your Honor.
THE COURT: All right.
THE CLERK: You don't need recommitment papers?
MS. PERRY: Another mittimus.
THE CLERK: We have to get that from Probation, so they'll have to stay when we have probation and do new commitment papers.
MR. WEAVER-BEY: Not a problem.
MR. CHRISTODLOUS Is this with or without prejudice? I think the State asked for not prejudice, and I wanted to make sure I understood how it was done.
MS. GEATHERS: I'm asking for commitment, your Honor.
THE COURT: I don't know what that means. think it's done with prejudice the commitment is extended.
MR. CHRISTODLOUS Thank you your Honor.
THE COURT: Anything further?
MS. GEATHERS: Nothing, your Honor.
THE COURT: All right. Good luck to you. Thank you. Thank you, CT Page 4744 Mr. Christodlous, Miss Geathers. Hearing is adjourned. Thank you, Miss Perry.
 CERTIFICATION
I hereby certify that the foregoing, pages 1-11, is a true and correct transcript of the stenographic notes taken in the Superior Court at New Britain, Connecticut, before the Honorable
Bradford J. Ward, Judge,
Gloria Arroyo Certified Court Reporter